***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Cramer and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the Plaintiff and the Defendant-employer.
3. American Motorist Insurance Company was the carrier on the risk.
4. Plaintiff's average weekly wage was $710 pursuant to the approved Form 21, which yields a compensation rate of $473.36 per week.
5. Plaintiff first began working for the Defendant-employer at the Strohs plant in April of 1974. She suffered a compensable injury on December 16, 1996. The Form 21 agreement for compensation was approved by the Commission on February 26, 1997. Under this agreement, Plaintiff received compensation at the rate of $473.36 per week for "necessary" weeks beginning December 24, 1996.
6. Plaintiff is claiming additional compensation as follows: temporary total disability compensation for April of 1998 through the present and temporary partial disability compensation and reimbursement for medical expenses. Plaintiff also claims she will be owed permanent partial disability in the future.
7. The depositions of David Janeway, M.D. and Gary Poehling, M.D. are a part of the record.
 ***********
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On the hearing date before the Deputy Commissioner, Plaintiff was 58 years of age, having a date of birth of September 26, 1942. She is a high school graduate who has also attended cosmetology school and completed two years of college, and classes in typing and computers as recently as 1990.
2. Beginning in April 1974, for the first ten years of her employment, Plaintiff worked in packaging. For the next ten years prior to her accident, Plaintiff worked as a quality assurance lab technician. Plaintiff sustained an injury by accident on December 16, 1996, when she slipped while stepping on a platform, and fell, sustaining a Colles fracture to her left wrist and a cut to her left palm.
3. Plaintiff was treated at the emergency room and came under the care of orthopaedic specialist Dr. David Janeway, who performed a closed reduction of the fracture. Her cut was irrigated, debrided and closed.
4. As a consequence of her left wrist injury, Plaintiff developed Reflex Sympathetic Dystrophy (RSD) in her left upper extremity and a "frozen shoulder" syndrome in her left shoulder. RSD, which may also be referred to as a chronic pain syndrome, is a condition which may be characterized by various symptoms, such as pain and swelling. Both Dr. Janeway and Dr. Gary Poehling, who did an independent assessment of Plaintiff, have determined that Plaintiff suffers from RSD as a consequence of her injury. Dr. Janeway characterizes her RSD as "moderately severe."
5. Dr. Janeway sent Plaintiff first to physical therapy and then to the High Point Pain Management Center, where she attended a full-time program from June 16 through August 1, 1997. Plaintiff continued in the physical therapy and counseling programs of the Pain Management Center on an outpatient basis through November 5, 1997.
6. Dr. Janeway saw Plaintiff on August 25, 1997, at which time he found she was doing well orthopaedically. He found no restriction from an orthopaedic standpoint, but noted she would have some restriction due to her RSD. He waited for Plaintiff's work restrictions to be assessed at the Pain Center.
7. On August 28, 1997, Dr. Suzanne Keddie, the medical director of the Pain Center, released Plaintiff to return to sedentary work, with no overhead work and using her left hand to assist only, and not lifting more than 5 pounds with the left hand, and 15 pounds with the right hand. In October, an occupational therapist visited Plaintiff's job site and determined that the modified job which duties Plaintiff had been given were within her restrictions.
8. Plaintiff returned to work as a lab technician doing modified work on September 1, 1997 at four hours per day. After about 3 weeks, she increased her hours to 6 hours per day. On October 23, 1997, following the assessment of the occupational therapist, Dr. John Goeke, the Psychology Services Director of the Pain Management Center released Plaintiff to return to full time work.
9. By November 12, 1997, Dr. Janeway found Plaintiff to be at maximum medical improvement with a twenty percent permanent impairment to her left arm. Dr. Janeway's testimony shows that this rating is not based upon a strict orthopaedic impairment, but is based in part on her ongoing pain syndrome (RSD), which significantly limits the functioning of her left upper extremity.
10. Upon Plaintiff's return to work, significant modifications were made to accommodate her restrictions. Plaintiff could only perform the lightest function duties of the lab technician position. She used the computer most of the time. She could not do air checks or work with the lathe, both of which required the use of two hands. She could not carry sample cases up and down the stairs. She could not use both hands to open bottles or cans, even though the employer provided her with special grip gloves.
11. As indicated by the testimony of both Doug Norris, a former Stroh employee and Teamster Union Representative, and Paul Hoeing, the Human Resources Manager at the Stroh's plant, the Plaintiff's position was so significantly modified that it could not be considered a regular job. The employer would not have hired someone in a competitive market place to perform these significantly modified duties.
12. Plaintiff performed the duties of this position as modified from her return to work in September 1997 until August 30, 1998. At that time, the employer lost business with Pabst. Due to the loss of this business, Plaintiff was laid off work, along with twenty-five percent of the employees of the Stroh's plant.
13. When she was first laid-off, Plaintiff applied for and was paid unemployment benefits. Documents submitted by Plaintiff show that she applied for two jobs per week from December 1, 1998 through April 15, 1999, without success. She has not applied for any work since May 1999.
14. In May 1999, the employer called back three employees from the packaging department to perform some work in preparation for a plant shutdown. Plaintiff was not called to come in to work, because she could not perform the necessary duties, which required two-handed lifting of packages. On July 30, 1999, the Strohs plant shut down and all employees were laid off.
15. Since the Plaintiff was laid off, she has not been able to find suitable employment. Both Dr. Janeway and Dr. Poehling have assessed Plaintiff with twenty percent permanent impairment to her left arm, and have testified that she should be able to work in some employment. Although the physicians do not consider her to be totally disabled, the evidence fails to establish that she has wage earning capacity, given her age, her experience and her restrictions, which limit her to essentially doing one-handed work. It appears that Plaintiff would need vocational assistance or retraining to return to competitive employment within her restrictions.
16. The physicians agree and the evidence shows that Plaintiff will need ongoing medical treatment for pain management due to her RSD.
17. Plaintiff also developed some depression and needed some psychological treatment in connection with her pain management. This condition has been managed appropriately and is not of itself disabling.
 ***********
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As a consequence of her admittedly compensable injury by accident of December 16, 1996, Plaintiff sustained a Colles fracture to her left wrist and developed reflex sympathetic dystrophy of the left upper extremity. Plaintiff has needed and will continue to require reasonably necessary medical treatment, including pain management, and psychological treatment. Defendants are responsible for providing all such ongoing reasonably necessary medical treatment. N.C. Gen. Stat. §§ 97-2(6);97-25.
2. The approved Form 21 agreement creates a rebuttable presumption of ongoing disability. Kisiah v. W. R. Kisiah Plumbing, Inc.,124 N.C. App. 72 (1996), disc. rev. denied, 345 N.C. 343 (1997). The evidence fails to show that Plaintiff's trial return to work was successful, since her job duties were so significantly modified that her work did not reflect her true wage earning capacity in a competitive marketplace. Bostick v. Kinston-Neuse Corp., 145 N.C. App. 102 (filed July 17, 2001); Peoples v. Cone Mills, 316 N.C. 426 (1986). Where the work Plaintiff was performing was so significantly modified to accommodate her restrictions, such that it was not a job the employer would fill in a competitive job market, the fact that the "trial" return to work period exceeded nine months under N.C. Gen. Stat. § 97-32.1
does not rebut the Plaintiff's presumption of ongoing disability.
3. Defendants should be allowed a credit for unemployment benefits paid to Plaintiff against any ongoing disability compensation benefits due Plaintiff. N.C. Gen. Stat. § 97-42.1.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay all medical expenses incurred or to be incurred by Plaintiff as a result of her compensable left arm injury, including reasonably necessary pain management and psychological treatment.
2. Defendants shall pay Plaintiff compensation at the rate of $473.36 per week beginning August 31, 1998 and continuing until further order of the Commission. The amount that has accrued to date shall be paid in a lump sum. Defendants are granted a credit for any unemployment benefits paid to Plaintiff, to be deducted from the lump sum due Plaintiff.
3. A reasonable attorney's fee of twenty-five percent of the compensation awarded to Plaintiff herein is approved for her counsel, to be deducted from the lump sum due Plaintiff.
4. Defendants shall pay the costs, including the expert witness fees previously approved of $350 to Dr. Poehling and $525 to Dr. Janeway.
This the ___ day of July 2002.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
DCS/bjp